**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**CANEEL BAY PLANTATION, INC., Defendant**

Civil No. 180-1966

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

February 5, 1968

A. ROBERT PFEFFER, ESQ., Assistant Attorney General, *for plaintiff*

GEORGE H. T. DUDLEY, ESQ., *for defendant*

MICHAEL, *Judge*

## STATEMENT OF FACTS

This action for injunctive relief and motion to dismiss for failure to conduct an administrative hearing originally came up before the court at Part II. In its opinion, after considering the briefs submitted and argument of counsel, the court stated that "the record is barren of the factual findings or the standards or the criteria which the Assistant Commissioner of Labor, acting for the Commissioner, applied in reaching the determination that there was a resident worker available as a chambermaid who was occupationally qualified. Yet it was on this basis that Caneel Bay was notified that Chambermaid Williams had to be discharged to make room for Phyllis Peltier."

As a consequence, the court denied the petition for injunctive relief "without prejudice", and remanded the case to the Commissioner of Labor, [5 V.I. 655] "so that the Assistant Commissioner of Labor familiar with this case *ab initio* may make explicit findings of fact from which the conclusion may be drawn that Phyllis Peltier was and is occupationally qualified as a chambermaid and thus, according to law, she should replace Kathleen Williams at Caneel Bay."

The matter is again before the court on a Petition, which was subsequently amended, praying the court for injunctive relief by enjoining the defendant from employing *any* non-resident worker in the position of chambermaid so long as the resident worker Phyllis Peltier, who had been found occupationally qualified on March 7, 1966 by the Commissioner in his findings dated December 22, 1966, is available for the position.

The amendment praying that defendant be enjoined from employing *any* non-resident worker so long as Phyllis Peltier is available for the position, instead of confining it to *Kathleen Williams*, stems from the fact that counsel for the plaintiff, A. Robert Pfeffer, Esq., Assistant Attorney

577

General, was informally notified by the attorney for the defendant, George H. T. Dudley, Esq., that Kathleen Williams is no longer employed by the defendant and that the defendant does not intend to terminate the employment of any other non-resident chambermaid and does not intend to rehire Phyllis Peltier.

The pertinent allegations of the plaintiff in the present posture of its Amended Complaint are: a) that the Assistant Commissioner of Labor, acting for the Commissioner, has determined pursuant to 24 V.I.C. 129 that there is an occupationally qualified worker, Phyllis Peltier, to fill the position of chambermaid at Caneel Bay Plantation, Inc., in lieu of any non-resident worker having less seniority in that classification; b) that notwithstanding the defendant has been so notified, has refused to employ Phyllis Peltier, who is still unemployed and available for employment; and c) that the defendant is not in full compliance with 24 V.I.C. 129 until such time that Phyllis Peltier is unavailable for employment or until such time as the defendant no longer has non-resident chambermaids in its employ.

In its Answer and Special Defense to the Amended Complaint, the defendant contends: 1) that Phyllis Peltier is not an occupationally qualified chambermaid in terms of the provisions of 24 V.I.C. 129(b) for employment at defendant's establishment; 2) that the Commissioner has not determined the occupational qualification of Phyllis Peltier as provided in 24 V.I.C. 129(c); and 3) that the Findings of December 22, 1966, and referral Order of the Commissioner dated March 7, 1966, do not comply with the provisions of 24 V.I.C. 132, ending with a prayer for dismissal of plaintiff's complaint.

To defendant's Answer and Special Defense plaintiff filed motion to strike certain portions thereof. After hearing on this motion and considering the memorandum of law filed by the plaintiff in support thereof, the court

entered an order granting said motion in part and set the matter for hearing on its merits as to occupational qualification of the complaining witness, Phyllis Peltier, as it was satisfied by the record and argument of counsel that the investigation conducted by the Commissioner as to the basis upon which Findings of Fact were made as to the occupational qualification of the complaining witness, Phyllis Peltier, and upon which plaintiff relies for injunctive relief, was inadequate. This inadequacy arises through failure of giving notice and opportunity to be heard on the issue of Peltier's occupational qualification by the Commissioner to the defendant, which, in the instant case, are essential to due process. 5 V.I. 665, 661.

As indicated in its order, the question now before the Court is whether Phyllis Peltier is occupationally qualified as a chambermaid to work at defendant's resort.

Pursuant to agreement of the parties that the court would rule at the end of the trial as to the admissibility of the Exhibits submitted, the following are admitted:

Plaintiff's Exhibits 1 to 7, and Defendant's Exhibits A, B, C, D, E, F, H, I, J, K, L, M, N, O, P, R, T, U, V and W.

While the proceedings and record in the case have been extensive and voluminous, the findings and discussion by the court need not be in determining the one issue before it.

Consequently, the court makes the following

### FINDINGS OF FACT

The complaining witness, Phyllis Peltier, was employed as a chambermaid at the Caneel Bay Plantation, Inc., beginning in the month of March, 1962, at which time she was a bonded alien.

During the period 1962 to 1964, or thereabouts, most of her work as a chambermaid was done at the home of Mr. Moore, a former manager at Caneel Bay, who also had

a child living with him and taken care of by Peltier. As a result, Mr. Moore was friendly towards Peltier, as indicated by Government's Exhibit No. 6.

After Mr. Moore left, Peltier was removed from her duties of taking care of the Manager's house by Mrs. La Rosa, the Housekeeper, and replaced by a "bonded alien", according to Peltier, which was evidently displeasing to Peltier.

As a consequence, ever and anon Peltier was dissatisfied with certain assignments given her by La Rosa, which reflected in her attitude and quality of her work, and to which her attention was called in writing on more than one occasion by La Rosa.

In the main, other employees had similar assignments from time to time, so that the court finds no discrimination against Peltier by La Rosa.

That beginning with the summer of 1965, the management began to get reports of thefts of money from guest rooms, concerning which entries were made in the records of the employees alleged to have serviced said rooms.

According to the complaint of a guest to the management, and as appears in a deposition taken by and on behalf of the complaining witness in the case of the Government of the Virgin Islands v. Phyllis Peltier, at which her attorney was present (Defendant's Exhibit F), the complaining witness, Phyllis Peltier, who was left by the guests in their room when they left, was suspected of removing $10.00 from money which had been left by one of them.

According to Defendant's Exhibit K, one Mr. Koch, a guest, reported to the Management that Mrs. Koch, his wife, walked into her room and found the complaining witness, Peltier, going through her drawer and when asked what she was doing, replied "nothing".

Due to suspicion of thefts by Peltier, the Executive Manager, Mr. Brewer, caused to be placed in a billfold in a room occupied by an employee the sum of $50.00, with serial numbers recorded. Claiming that a ten dollar bill was missing sometime later and the only known person to enter the room other than the employee was Peltier, the incident was reported to the Police, who, upon searching the purse of Peltier with her consent after she had gone shopping, did not find the missing bill. See Defendant's Ex. H which states that the Police said, "nothing specific could be done now and we would have to watch for any further development."

Peltier, in the presence of union representatives, admitted she took lumber from Caneel Bay property.

There was a fight between Peltier and one of the other maids in the linen room, which resulted in her suspension for three weeks by the management, but was reduced to two weeks by the arbitrator.

In order to discuss the incident La Rosa tried to get Peltier to go to the office, but she replied that "Anything you want to tell me you do in writing."

Peltier admitted in the presence of union representatives that she was disrespectful (yelled and screamed) to La Rosa.

Peltier refused to clean the terrace, one of her assignments, went home and was suspended therefor.

Peltier was assigned to clean a certain room and she refused to do so, which La Rosa had to assign to someone else. For this incident she was reprimanded by La Rosa, who, at times, according to one of the managers, was somewhat harsh in such reprimands.

On one occasion when the schedule for the maids was posted, Peltier wrote beside her name: "Sorry Miss La Rosa I am off day off night," and on another: "Miss La Rosa I was off Sunday. I have to be off my day as usual

Friday. You chose to give me Thursday. Thanks, off is off. Sorry, I can't come in the night."

On one of these occasions she afterwards submitted a doctor's certificate to the effect that she was sick, but did not so indicate when she wrote the note.

By reason of suspicion of Peltier's honesty and upon advice of the Police sometime during 1965, the management tried to entrap Peltier by placing a particular kind of powder on bills to be left in a room of the hotel which Peltier had to clean, and that subsequently $10.00 was missing. Upon receiving report of the missing money Peltier was requested to come into the office and after being there for a considerable time, spots developed on her hand. Although there was objection to this testimony by the plaintiff, which the court sustained, the plaintiff on cross examination elicited it.

On December 16, 1965 Peltier was suspended from her duties, pending the result of the Police Department's investigation of the theft of the powdered bill and the result of the investigation with respect to her disrespect to Mr. Brewer by her statement that she was not "a white man's slave."

Peltier was acquitted of the charge of petit larceny, and on March 18, 1966 she was formally discharged.

### DISCUSSION

The court admitted Plaintiff's Exhibit No. 5, Agreement for Employment of Non-Resident Workers between Caneel Bay Plantation, Inc., and the Commissioner of Labor, Government of the Virgin Islands, as the Defendant was required thereunder to terminate the services of any non-resident to make place for a resident worker upon referral by the Commissioner of Labor in accordance with applicable statute.

The court also admitted Defendant's Exhibit A, which is the Collective Bargaining Agreement between Caneel Bay Plantation, Inc., and the Employer of Phyllis Peltier, and the Virgin Islands Labor Union, AFL–CIO, her bargaining representative, as it was in force during the period considered herein and sets forth required standards of conduct of both employer and employee.

In the Employer-Employee Agreement, sec. 10 provides that employees shall obey all Employer rules which are non-discriminatory and reasonably necessary to maintain efficiency and discipline, and in sec. 11, that the Employer may temporarily assign any employee to perform any work of which the employee is capable, and if in the discretion of the employer it is desirable to assign such an employee permanently to such work, then the employee shall continue such an assignment at wages fixed for such classification.

The Agreement also sets forth numbered *Causes for Discharge* which are, among others; 1) Failure to perform efficient work; 2) Dishonesty; 4) Absence from work without adequate excuse and making proper effort to enable the Employer to secure replacement; 6) Engaging in physical fighting while on the premises; 7) Repeated insubordination to superior or executive personnel; and 8) Lack of courtesy to guests of Employer.

Counsel for the Government is to be complimented for his detailed Memorandum of Fact and his discussion thereof. However, the very necessity of having to belabor the voluminous testimony in an attempt to justify Peltier's attitude and conduct is proof indeed that she is occupationally unqualified to work as a chambermaid *at defendant's resort*, and for which defendant is not responsible.

Notwithstanding Peltier was acquitted of the criminal charge of larceny, the appearance of spots on her hand after the powdered money was missing was tell-tale strong

enough to educe suspicion, a situation inconducive to confidence and the establishment of an acceptable Employer-Employee relationship.

Although the Findings of the court are not exhaustive, the behavioral pattern therein exemplified by Peltier after Mr. Moore left Caneel Bay Plantation, and as shown by the record, has been one which clearly shows she resented the loss of her "privileged position", as counsel for the Government puts it. This resentment has been made manifest in her attitude towards her work, her dealing with the executive personnel of the defendant and quarrels with other workers.

Albeit Peltier was suspended on two occasions for her conduct, and was acquitted of the criminal charge of larceny, this court finds from the above and concludes as a matter of law that her ultimate discharge was justified, using as a reasonable standard the provisions of the Employer-Employee Agreement.

### DECREE

In view of the court's Findings and Discussion thereon, it is

ORDERED, ADJUDGED AND DECREED that plaintiff's request for injunctive relief by enjoining the defendant from employing any non-resident worker in the position of chambermaid so long as the resident worker Phyllis Peltier is available for the position, be, and the same hereby is, denied.